**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| Gregory P. Ashbrook, | : | Case No. 05: 09 CV 0161 |
| Petitioner, | : | |
| vs. | : | |
| Richard Hall, | : | **MAGISTRATE'S REPORT AND RECOMMENDATION** |
| Respondent. | : | |

Pursuant to 72.2(b)(2) of the United State District Court Northern District of Ohio Local Civil Rules, this case was automatically referred to the undersigned Magistrate Judge for report and recommendation.  Pending is Petitioner's Petition under 28 U. S. C. § 2254 for Writ of Habeas Corpus and Respondent's Return (Docket Nos. 1 & 8).  For the reasons that follow, the Magistrate recommends that the Court deny the Petition for Writ of Habeas Corpus.

### I.  FACTUAL BACKGROUND.

Under the ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT OF 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996), the factual findings made by a state court in the direct appeal are presumed to be correct in a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to a judgment in state court.  *Keith v. Mitchell*, 455 F. 3d 662, 666 (6th Cir.

2006) (*citing* 28 U. S. C. § 2254 (e) (1) (2006)).  A habeas court must presume the state court's factual findings are correct. 28 U.S.C. § 2254(e)(1).  The petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U. S. C. § 2254(e)(1)(Thomson Reuters 2011).  Here, Petitioner has not sustained the burden of rebutting the presumption of correctness.

{¶ 2} The Internet Crimes Against Children Task Force conducted an "on-line crimes" investigation targeting Internet chat rooms.  As part of the investigation, Detective Bobby Grizzard, created a profile for a fictional mother with the screen name "Lori 4-Laci".  Using this screen name and a fictitious profile, Grizzard entered Internet chat rooms on America Online (AOL).  The profile attached to the screen name described "Lori", the purported poster of the messages, as salesperson located in Northeastern Ohio.  A personal message accompanied the profile, and stated: "Like mother, Like daughter.  Bring a child up in the way you want them to be, show them the way of life, and some of the hard things in life can be fun, fruitful, and exciting."  The profile was visible to AOL members who clicked on the screen name "Lori 4 Laci."

{¶ 3} One chat room in which "Lori 4 Laci" was posted is entitled "Take Daughter to the Park."  Detective Grizzard received hundreds of responses to this profile and others like it; most were harmless, non-sexual responses from people who wanted to talk about miscellaneous topics.  On September 25, 2003, Detective Grizzard was contacted by someone with the screen name "OBFUMAN."

{¶ 4}The first contact from OBFUMAN asked how old Laci is, and stated he would love to chat.  Detective Grizzard replied, "Laci is 12." OBFUMAN responded, "nice age; what do you like to do together?"  Grizzard replied, "everything."  OBFUMAN stated that he would love to meet both mom and daughter, and inquired as to their location in Northeastern Ohio.  OBFUMAN stated that his screen name stood for "Old Bald Fat Ugly Man."  OBFUMAN asked "What kind of fun do you both like," and Grizzard replied, "Any."

{¶ 5} Detective Grizzard, posing as "Lori" pressed  stating that he asked "Laci's" age, but still had not told her exactly what he was looking for.  Petitioner responded that he wanted to meet and when would that be possible.  He further stated that he wanted to meet for the purposes of "fun and pleasure" with both of them.  He stated that he wanted to meet for the purpose of "SREX" [sic]. used explicit language, stating that he "liked to lick and to fuck."  "Lori" replied, "We can do that," and told  Petitioner to make the arrangements.  When Petitioner said he was cautious about hotels, "Lori" suggested the Hampton Inn in Massillon.

{¶ 6} Conversations between "Lori" and Petitioner continued after the initial discussion on September 25, 2003.  All conversations were between Petitioner and "Lori;" "Laci" did not converse with Petitioner on line or in person.  Several times Petitioner asked "Lori" whether she was a law enforcement officer, which Grizzard denied.  Petitioner also stated that he was not involved in law enforcement.  Eventually, photos were exchanged, also at 's Petitioner's request.  The photo provided for "Lori" was that of an undercover female police officer; the photo of "Laci" was of another undercover police officer as she appeared at age 12.

{¶ 7} The conversations between Petitioner and "Lori" were explicit in regard to what sexual conduct Petitioner expected.  "Lori" asked what acts he wanted from "Laci" and Petitioner responded that she should tell him whatever they were willing to do and he would "respect their limits." Petitioner stated that he wanted them both.  "Lori" told him that she needed to know what he wanted from "Laci" so that she could prepare her, and stated that "back door is out for [Laci]," meaning anal intercourse.  Petitioner stated that he understood.  The conversation touched upon sex toys, or "gadgets," and the expectation that Petitioner would use condoms with "Laci" but not with "Lori". Petitioner stated that he wanted to make them both smile, and "Lori" responded, "hey, no rough sex with my daughter."  Petitioner's response was "no, mutual fun and pleasure."

{¶ 8} A "meeting" was initially arranged for October 20, 2003, but "Lori" contacted Petitioner to cancel, and told Petitioner to let "her" know what he was expecting and possibly reschedule. Petitioner responded that he wondered about meeting Saturday evening, and suggested the three go to dinner, to get to know each other, and then see what else they would enjoy.

{¶ 9} On October 28, 2003, "Lori" and Petitioner discussed the details of a meeting planned for November 1.  Petitioner stated that they could go to dinner before sex, and "Lori" suggested the Olive Garden Restaurant.

{¶ 10} Petitioner requested another meeting with a fictional mother and daughter, and arrangements were made for a meeting on November 1, 2003, at the Hampton Inn in Massillon. "Lori" and Petitioner discussed protection, with Petitioner understanding he was required to use a condom for any intercourse with "Laci" but not with "Lori."  The conversation with Petitioner indicated he was coming to Massillon to have sexual intercourse with "Laci," and that he hoped "Lori" would also participate.

{¶ 11} Petitioner also had two telephone conversations with "Lori" in reality an undercover police officer, Kathy Bickford.  The telephone calls were recorded.  One conversation took place the day before the planned meeting.  During this conversation, Petitioner again mentioned something to the effect of being respectful of "Lori's" limits.  The second conversation occurred on November 1, 2003, the day of the planned meeting at the Hampton Inn, when Petitioner called "Lori" to let her know he was in Wooster and would soon be in town.

{¶ 12} Shortly thereafter, Petitioner arrived at the Hampton Inn for the rendezvous.  Detective Grizzard was behind the counter at the registration desk, and watched as Petitioner requested a room with a king size bed and paid in cash.  Petitioner then went up to the room, and came back down and went to his van.  Petitioner was arrested as he entered the van.

{¶ 13} A subsequent search of Petitioner's van yielded an overnight kit, a box of condoms, two roses, one pink and one red, and a security lock for the hotel door.  These items were in a Wal-Mart bag.

{¶ 14} Detective Grizzard spoke with Petitioner shortly after his arrest.  He indicated that he came to Massillon to have dinner with "Lori" and "Laci," and that he did not know their last names. He admitted that he had operated through the screen name OBFUMAN, and that he was the only person who had engaged in the conversation with "Lori" as OBFUMAN.  Detective Grizzard asked Petitioner whether he knew how old "Laci" was, and Petitioner stated that she was 12.  Detective Grizzard asked how old "Laci" appeared to be in the photo he had received, and  stated "10, 11, or 12."  When asked what his intentions were, Petitioner replied that he did not know whether he would have been able to go through with having sex with "Laci."

3

*State v. Ashbrook*, 2005 WL 428032, *1-3 (2005).

## II. PROCEDURAL BACKGROUND.

On January 12, 2004, Petitioner was indicted on one count of **"attempt"** to commit an offense

of rape, a violation of OHIO REV. CODE § 2923.02(A) (Docket No. 8, Exhibit 2, pp. 1-2 of 186).  On

March 17, 2004, a jury found Petitioner guilty of the crime of attempt to commit an offense of rape.

Petitioner was remanded to a state facility to serve a stated prison term of eight years (Docket No. 8,

Exhibit 2, pp. .15-18 of 186).

Petitioner perfected a notice of appeal in the Court of Common Please for Stark County, Ohio

(Docket No. 8, Exhibit 2, p. 23 of 186).  There were five assignments of error presented to the court

of appeals:

1.    Petitioner's conviction was against the manifest weight of the evidence.
2.    The trial court erred in denying Petitioner's motion to suppress.
3.    The trial court erred in denying Petitioner's motion to dismiss.
4.    The trial court erred in finding Petitioner a sexual predator.
5.    The trial court erred in imposing the maximum sentence.

(Docket No. 8, Exhibit 2, p. 25 of 186).

The Court of Appeals for the Fifth Appellate District affirmed the conviction and all of the

assignments of error were overruled (Docket No. 8, Exhibit 2, pp. 72-93 of 186).

Petitioner filed a notice of appeal in the Ohio Supreme Court (Docket No. 8, Exhibit 2, pp. 94-

96 of 186).  In the memorandum in support of jurisdiction, Petitioner asserted four propositions:

1.    A person may not be convicted of attempted rape when the conduct relied upon to
      support the charge is coupled with speech protected under the First Amendment.
2.    A conviction for attempted rape may not stand where there is no conduct constituting
      a substantial step in committing rape.
3.    A trial court does not have the authority to impose a maximum prison term on a person
      convicted of a second-degree felony in the absence of a jury finding of the factions in
      OHIO REV. CODE §§ 2929.14(B) and 2929.14(C).
4.    A trial court violates an individual's due process rights when the court determines that

4

the individual is a sexual predator, in the absence of clear and convincing evidence to
support that determination.

(Docket No. 8, Exhibit 2, p. 98 of 186).

The Supreme Court accepted the appeal on proposition three (Docket No. 8, Exhibit 2, p. 154

of 186).  The case was remanded to the Court of Common Pleas for Stark County to resentence

Petitioner consistent with *State v. Foster*, 109 Ohio St.3d 1, 25 845 N.E.2d 470, 494 (2006) (Docket

No. 8, Exhibit 2, p. 155 of 186).

On June 24, 2006, Petitioner was resentenced to serve a stated term of eight years in prison

(Docket No. 8, Exhibit 2, p. 157 of 186).  Petitioner filed a notice of appeal in the court of common

pleas (Docket No. 8, Exhibit 2, p. 159 of 186).  Petitioner presented the following issues for review:

1. Where the Ohio Supreme Court's rule in *State v. Foster*, does not cure Ohio's unconstitutional sentencing scheme, Petitioner's sentence remains unconstitutional.
2. Where the application of the remedy for Ohio's unconstitutional sentencing scheme violates Petitioner's right under the due process and ex post facto clauses of the Ohio and United States Constitutions.
3. Where the court conducts a *sua sponte*, after-the-fact resentencing to correct sentencing errors when the remedy is a direct appeal, it commits error and the sentence must be vacated.
4. Where the court imposes a term of post-release control that was not imposed in the original sentence, it violates the defendant's rights under the double jeopardy clauses of the Ohio and United States Constitutions

(Docket No. 8, Exhibit 2, p. 161-162 of 186).

The Court of Appeals denied the assignments of error and affirmed the conviction (Docket No.

8, Exhibit 4, pp. 1-5 of 420).  Petitioner perfected a notice of appeal in the Ohio Supreme Court

(Docket No. 8, Exhbiit4, p. 7 of 420).  Petitioner asserted one proposition of law:

1. The remedy that the Supreme Court set forth in *State v. Foster* violates the Ex Post Facto and Due Process Clauses of the United States Constitution.

(Docket No. 8, Exhibit 4, p. 11 of 420).

5

Chief Justice Thomas J. Moyer denied the leave to appeal and dismissed the appeal as not involving any substantial constitutional question (Docket No. 8, Exhibit 4, p. 46 of 420).

Petitioner filed a Petition under Section 2254 for Writ of Habeas Corpus on July 22, 2009. He alleged the following violations:

(1)     Petitioner was denied the right to freedom of speech.
(2)     The trial court erred in imposing the maximum sentence, violating the double jeopardy clause of the constitution and imposing post-release controls and sexual predator status.
(3)     Petitioner's conduct did not constitute a substantial step in committing rape.
(4)     Trial counsel was ineffective.

(Docket No. 1).

### III. JURISDICTION.

A federal court has jurisdiction to consider a petition for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court only on the grounds that he or she is in custody in violation of the constitution or laws or treaties of the United States.  *Leslie v. Randle*, 296 F.3d 518, 521 (6ᵗʰ Cir. 2002) (*citing* 28 U.S.C. § 2254 (Thomson/West 2002)).

In the instant case, Petitioner was convicted in an Ohio Common Pleas Court.  He is in custody of the Richland Correctional Institution in Canton, Ohio.  His claims implicate the First, Fourth and Sixth Amendments.  This Court has jurisdiction to address the merits of Petitioner's Writ of Habeas Corpus.

### IV. HABEAS CORPUS STANDARD OF REVIEW.

Under the AEDPA, a federal court may not grant a writ of habeas corpus to a state prisoner with respect to any claim adjudicated on the merits unless (1) the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," *Thompson v. Bell,* 580 F.3d 423, 433(6ᵗʰ Cir. 2009) (*citing* 28 U.S.C. § 2254(d)(1),

or (2) the state court's decision "was based on an unreasonable application of the facts in light of the evidence presented in the State court proceedings." *Id.* at 433-434 (*citing* 28 U. S. C. § 2254(d)(2)). A state court's decision is "contrary to" clearly established federal law under § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* (*citing Williams v. Taylor,* 120 S. Ct. 1495, 1523 (2000)).  An "unreasonable application" occurs when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*  A federal habeas court may not find a state court decision unreasonable "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* (*citing Williams,* 120 S. Ct. at 1522).  Rather, the state court decision must be an "objectively unreasonable" application of federal law to be reversed. *Id.* (*citing Williams,* 120 S. Ct. at 1521).

## V. DISCUSSION.

The Magistrate has the responsibility of making a determination of whether Petitioner has complied with the procedural devices established to challenge illegal confinement.  Initially, the Magistrate will examine whether Petitioner's claims are barred from review for failure to exhaust his state remedies or procedural default.  Those claims that are not subject to procedural default are reviewed on the merits.

## 1.   EXHAUSTION STANDARDS.

A state prisoner must exhaust his state remedies before bringing his claim in a federal habeas corpus proceeding. *Drummond v. Houk,* 2010 WL 5464172, *13 (N. D. Ohio 2010) (*citing* 28 U.S.C.

§ 2254(b), (c); *see Rose v. Lundy*, 102 S. Ct. 1198, 1205 (1982))  Exhaustion is fulfilled once a convicted defendant seeks review of his or her claims on the merits from a state supreme court.  *Id.* (*citing O'Sullivan v. Boerckel*, 119 S. Ct. 1728, 1732 (1999)).  A habeas petitioner satisfies the exhaustion requirement when the highest court in the state in which the petitioner has been convicted has had a full and fair opportunity to rule on the claims.  *Id.* (*citing Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *citing Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990)).  If, under state law, there remains a remedy that a petitioner has not yet pursued, exhaustion has not occurred, and the federal habeas court cannot entertain the merits of the claim.  *Id.*

A petitioner " 'cannot obtain federal habeas relief under 28 U.S.C. § 2254 unless he has completely exhausted his available state court remedies to the state's highest court.' " *Id.* at *14 (*citing Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001) (*quoting Coleman v. Mitchell*, 244 F.3d 533, 538 (6th Cir. 2001)).  Rather than dismiss certain claims the court deems unexhausted, however, a habeas court need not wait for exhaustion if it determines that a return to state court would be futile.  *Id.* (*see Lott v. Coyle*, 261 F.3d 594, 608 (6th Cir. 2001)).  In circumstances where the petitioner has failed to present a claim in state court, a habeas court may deem that claim procedurally defaulted because the Ohio state courts would no longer entertain the claim.  *Id.* (*see Buell*, 274 F.3d at 34).  To obtain a merit review of the claim, the petitioner must demonstrate cause and prejudice to excuse his failure to raise the claim in state court, or that a miscarriage of justice would occur were the habeas court to refuse to address the claim on its merits.  *Id.* (*citing Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir. 2000) (*citing Wainwright v. Sykes,* 97 S. Ct. 2497, 2506 (1977)).

## 2.     PROCEDURAL DEFAULT STANDARDS.

In general, a federal court may not consider "contentions of federal law which are not resolved on the merits in the state proceeding due to petitioner's failure to raise them as required by state procedure." *Id.* (*citing Syke*s, 97 S. Ct. at 2506). If a "state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* (*citing Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 2564-2565 (1991)).

To be independent, a state procedural rule and the state courts' application of it "must rely in no part on federal law." *Id.* (*citing Fautenberry v. Mitchell*, No. C-1-00-332, 2001 WL 1763438, at * 24 (S. D. Ohio 2001) (*citing Coleman,* 111 S. Ct. at 2555-2556). To be adequate, a state procedural rule must be " 'firmly established and regularly followed' " by the state courts at the time it was applied. *Id.* (*citing Beard v. Kindler,* 130 S. Ct. 612, 618 (2009) (*quoting Lee v. Kemna,* 122 S. Ct. 877, 885 (2002)). If a petitioner failed to timely present any federal habeas claims to the state courts but has no remaining state remedies, then the petitioner has procedurally defaulted those claims. *Id.* (*see Boerckel*, 119 S. Ct. at 1734; Rust, 17 F.3d at 160).

The now familiar test followed when the state argues that a habeas claim is defaulted is found in *Maupin v. Smith,* 785 F.2d 135 (6th Cir. 1986). The four-part test is as follows:

> First, the federal court must determine whether there is a state procedural rule that is applicable to the petitioner's claim and whether the petitioner failed to comply with that rule. *Id.*
> Second, the federal court must determine whether the state courts actually enforced the state procedural sanction-that is, whether the state courts actually based their decisions on the procedural rule. *Id.*

9

Third, the federal court must consider whether the state procedural rule is an adequate and independent state ground on which the state can rely to foreclose federal review of a federal constitutional claim. *Id.*

Fourth, if the federal court answers the first three questions in the affirmative, it would not review the petitioner's procedurally defaulted claim unless the petitioner can show cause for not following the procedural rule and that failure to review the claim would result in prejudice or a miscarriage of justice. *Id.* (*citing Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001) (*citing Maupin, supra*, 785 F.2d at 138) (further citations omitted)).

In determining whether the *Maupin* factors are met, the federal court looks to the "last explained state court judgment." *Id.* (*citing Ylst v. Nunnemaker*, 111 S. Ct. 2590, 2595 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000)). " '[A] procedural default does not bar consideration of a federal claim on habeas corpus review unless the last state court rendering a reasoned opinion in the case clearly and expressly states that its judgment rests on a state procedural bar.' " *Id.* (*citing Morales*, 507 F.3d at 937) (*quoting Frazier v. Huffman,* 343 F.3d 780, 791 (6th Cir. 2003)). Conversely, if the last state court to be presented with a particular federal claim reaches the merits, then the procedural bar is removed and a federal habeas court may consider the merits of the claim in its review. *Id.* (see Ylst, 111 S. Ct. at 2593).

If the first three *Maupin* factors are met, the claim is procedurally defaulted. *Id.* However, the federal court may excuse the default and consider the claim on the merits if the petitioner demonstrates that (1) there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error, or (2) a fundamental miscarriage of justice would result from a bar on federal habeas review. *Id.* (*see Maupin*, 785 F.2d at 138; *Hutchison v. Bell,* 303 F.3d 720, 735 (6th Cir. 2002); *Combs*, 205 F.3d at 274-275; *Coleman,* 111 S. Ct. at 2564-2565).

**3.    Analysis of Petitioner's First Ground for Relief.**

It is difficult to ascertain the crux of Petitioner's argument since he simply asserts "freedom

of speech " (Docket No. 1).  However, in his arguments to the Ohio courts, Petitioner argued that the state criminalized his speech, thereby violating the First Amendment (Docket No. 8, Exhibit 2, p. 35 of 186).  In other words, he was punished for mere belief and speculative thoughts, not what he did.  This is an unconstitutional infringement of the First Amendment.

Petitioner failed to present this claim or any form of the claim thereof, to the appellate court on direct appeal.  With no procedural avenues available for relief at this juncture in the litigation, it would be futile for Petitioner to continue to pursue his claims in state court.  It is clear that the state court would hold the claims procedurally barred and base its judgment on the procedural default.

Petitioner has effectively waived his First Amendment claim unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional errors or that the failure to consider the claims will result in a fundamental miscarriage of justice.  Petitioner is silent on the issue of whether he has cause for overcoming the procedural default.  Similarly, he failed to satisfy the prejudice element to overcome the procedural default bar.  Nor has Petitioner shown that if his claims were not considered on the merits, a fundamental miscarriage of justice will occur or a conviction of one who was actually innocent resulted.

The Magistrate finds that ground one is procedurally defaulted and waived for purposes of habeas review.

**4.     Analysis of Petitioner's Second Ground for Relief.**

Petitioner contends that the trial court erred in imposing the maximum sentence and that imposing the maximum sentence is tantamount to double jeopardy for the same offense.  Petitioner also argues that the trial court erred in imposing post-release controls and sexual predator status.

It is well established that state court determinations on questions of state sentencing law are

11

not cognizable on federal habeas review.  *Estelle,* 502 U. S. at 67-68.  A federal court may not issue the writ of habeas corpus on the basis of a perceived error of state law.  *Pulley v. Harris,* 104 S. Ct. 871, 875 (1984)).  However, if the error is so egregious as to amount to a denial of fundamental fairness or of other federal rights, the federal court may grant the habeas petition.  *See Id.*

At the time of Petitioner's second sentencing, Ohio's sentencing statutes required judicial fact-finding before imposition of, *inter alia,* a greater-than-the-maximum sentence or consecutive sentence. *See State v. Foster*, 109 Ohio St.3d 1, 25 845 N.E.2d 470, 494 (2006).  The Supreme Court of Ohio through its *Foster* decision severed from Ohio law those statutory sections that also violated the United States Supreme Court's decision in *Blakely v. Washington,* 124 S. Ct. 2531 (2004).  The result was that trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences.  *Foster,* 109 Ohio St.3d at 30, 845 N.E.2d 470 (¶ 100).

To the extent that the trial court may have erred under state law in imposing the maximum sentence, post-release controls and sexual predator status, this Court cannot review the claim as there is no fundamental error of constitutional dimension.  Habeas relief does not lie in claims against the state for the misapplication of its own sentencing laws.

Habeas relief is not available for Petitioner's allegation that the imposition of sentence effectively placed in him in jeopardy for the same offense.  Petitioner failed to present this claim to the state's highest court.  With no procedural avenues available for relief at this juncture in the litigation, it would be futile for Petitioner to continue to pursue this claim in state court.  It is clear that the state court would hold the claim procedurally barred and base its judgment on the procedural default.

Petitioner has effectively waived his Double Jeopardy claim unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional errors. He has failed to provide any excuse that would persuade the Court to overlook the default by finding that he was actually prejudiced or a fundamental miscarriage of justice will result without review. The Double Jeopardy claim is waived and not subject to habeas review.

### 5. Analysis of Petitioner's Third Ground for Relief.

Petitioner argued in the state courts that he was convicted of having dinner with Lori and Laci. He had not determined at dinner if he would engage in sexual conduct with Lori and/or Laci. Petitioner contends that there is a lack of evidence that he engaged in a substantial step toward committing rape (Docket No. 8, Exhibit 2, p. 32 of 186; 98 of 186).

The Ohio Supreme Court has concluded that under the "attempt" statute, the essential elements of a criminal attempt are the mens rea of purpose or knowledge, and conduct directed toward the commission of an offense. *State v. Curtis*, 2009 WL 119851, *6-7 (2009) (*citing State v. Woods*, 48 Ohio St.2d 127, 131, 357 N.E.2d 1059 (1976), death penalty vacated (1978), 98 S. Ct. 3133, *overruled on other grounds by State v. Downs*, 51 Ohio St.2d 47, 364 N.E.2d 1140 (1977)). A criminal attempt is complete when a defendant's conduct or acts constitute a substantial step in a sequence of events designed to result in the perpetration of a crime. *Id.* (*see State v. Kane,* 1984 WL 3309 at *3 (1984) (*citing Woods* at paragraph one of the syllabus). A substantial step involves conduct which is "strongly corroborative of the actor's criminal purpose." *Id.* (*citing Woods* at paragraph one of the syllabus). In accordance with OHIO REV. CODE § 2923.02(A), Ohio appellate courts have determined that the culpable mental state for attempt is either purposely or knowingly, depending on the culpability required to commit the underlying offense. *Id.*

Here, Petitioner went beyond preparation and took a substantial step toward the commission

13

of the crime of rape.  A reasonable observer could conclude that appreciable components of the crime had already been committed when Petitioner went to the hotel, leased a room and expected that a twelve year old child, accompanied by her parent, would join him.  By the time Petitioner went to his car to retrieve a box of condoms, a lock and romantic accouterments, he advanced the plan beyond mere preparation.  This evidence is strongly corroborative of Petitioner's purpose and amply supports the jury's finding that Petitioner took a substantial step toward the commission of child rape.

**6.      Analysis of Petitioner's Fourth Ground for Relief.**

Petitioner argues that counsel was ineffective; however, he failed to fulfill the exhaustion requirements for this claim.  Petitioner failed to fairly present his ineffective assistance of counsel claims through the requisite levels of state appellate review to the state's highest court.  No avenue of relief remains open and it would be futile at this juncture for Petitioner to continue to pursue his claims in state court.  It is clear that the state court would hold the claims procedurally barred and base its judgment on the procedural default.

Because of the procedural default, Petitioner can no longer present his claims to a state court. Accordingly, he has waived them unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional errors or that the failure to consider the claims will result in a fundamental miscarriage of justice.  Again, Petitioner is silent on the reasons for his procedural default.  Thus, there is no evidence from which the Magistrate can satisfy the good cause standard for overcoming his procedural default.  Missing also is an argument to satisfy the prejudice element to overcome the procedural default bar.  Nor has Petitioner shown that if his claims were not considered on the merits, a fundamental miscarriage of justice will occur or a conviction of one who was actually innocent resulted.

The Magistrate finds that ground four is procedurally defaulted and waived for purposes of

14

habeas review.

## VI. CONCLUSION

For these reasons, the Magistrate recommends that the Court deny the Petition for Writ of Habeas Corpus and terminate the referral to the undersigned Magistrate Judge.


/s/Vernelis K. Armstrong
United States Magistrate Judge

Date:   April 11, 2011


## VII. NOTICE

Please take notice that as of this date the Magistrate's report and recommendation attached hereto has been filed.  Pursuant to Rule 72.3(b) of the LOCAL RULES FOR NORTHERN DISTRICT OF OHIO, any party may object to this report and recommendations within fourteen (14) days after being served with a copy thereof.  Failure to file a timely objection within the fourteen-day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.  The objecting party shall file the written objections with the Clerk of Court, and serve on the Magistrate Judge and all parties, which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  Any party may respond to another party's objections within fourteen days after being served with a copy thereof.

Please note that the Sixth Circuit Court of Appeals determined in United States v. Walters, 638 F.2d 947 (6th Cir. 1981) that failure to file a timely objection to a Magistrate's report and recommendation foreclosed appeal to the court of appeals.  In Thomas v. Arn, 106 S. Ct. 466 (1985), the Supreme Court upheld that authority of the court of appeals to condition the right of appeal on the filing of timely objections to a report and recommendation.

15

16